**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

MAR – 3 2006

GREGORY C. LANGHAM
CLERK

Civil Action No. 03-WY-1853 (BNB)

KRISTIN GRECO,

Plaintiff,

v.

WOODCREST HOMES, INC. and HARBOUR HOMES, INC., f/k/a GEONERCO, INC.,

Defendants.

---

## ORDER ON DAMAGES

---

This matter is before the Court on the Plaintiff's Motion for Award of Back Pay, Prejudgment Interest, Reinstatement or Front Pay, in Lieu of Reinstatement, and Postjudgment Interest. This Court, having reviewed the Pleadings, and being fully advised in the premises, FINDS and ORDERS as follows:

### BACKGROUND

The Plaintiff, Ms. Greco, was employed by the Defendants, Woodcrest Homes, Inc., and Harbour Homes, Inc. f/k/a Geonerco, Inc. (collectively "Woodcrest"), until she was terminated on February 27, 2002. Subsequent to her termination she filed this lawsuit alleging pregnancy discrimination and promissory estoppel. Prior to trial, the parties stipulated that the Court would determine damages, if the jury found for Ms. Greco on any of her claims. (Stipulation, August 15, 2005). A jury trial was held and the jury found in

favor of Woodcrest on the pregnancy discrimination claim, and in favor of Ms. Greco on the promissory estoppel claim. Therefore, the matter is now before the Court on the issue of damages to be awarded to Ms. Greco.

Ms. Greco claims that she is entitled to back pay, prejudgment interest, reinstatement or front pay in lieu of reinstatement, and postjudgment interest. In contrast, Woodcrest takes the position that Ms. Greco is not entitled to damages for lost wages at all.

## ANALYSIS

The question that must be addressed by this Court is what damages are available for recovery on promissory estoppel in this instance. The promise which formed the basis for Greco's promissory estoppel claim was a promise from her supervisor, Mr. David Havel. Mr. Havel told Ms. Greco that he would evaluate her performance in one month, after she had been provided with a December 14, 2001, written warning listing some performance deficiencies. The evidence also revealed that Havel indicated she would be "talked to" again before she was terminated and that she was told she was "doing OK." Ms. Greco never received the promised January evaluation. Nevertheless, on February 27, 2002, Woodcrest terminated Ms. Greco's employment.

Woodcrest has taken the position that Greco was an at-will employee at all times relevant to this litigation. Woodcrest argues that, in light of her at-will status, there was nothing to prevent Woodcrest from terminating Greco after providing her the promised evaluation. And, because she was terminated after the evaluation would have occurred, she

2

is not entitled to damages.

### 1.    At-will employment.

The Colorado courts have applied the rule that, even where employment is at-will, employees may still be entitled to enforce termination procedures contained in employee handbooks or communicated to employees under theories of promissory estoppel and breach of contract. Continental Air Lines, Inc. v. Keenan, 731 P.2d 708, 711-12 (Colo. 1987). Promises made subsequent to employment may indeed alter the terms of the at-will relationship. See Cronk v. International Rural Elec. Ass'n, 765 P.2d 619, 624 (Colo. App. 1988) ("Cronk I"). Therefore, the question of whether Ms. Greco is entitled to damages cannot be summarily dismissed merely because she was an at-will employee.

### 2.    Promissory estoppel remedy.

In this case, the jury found that Ms. Greco proved her claim for promissory estoppel. The Colorado Supreme Court has adopted the Restatement (Second) of Contracts rule regarding the remedy for promissory estoppel. Kiely v. St. Germain, 670 P.2d 764, 767 (Colo. 1983). The Restatement states, with respect to damages, that the "remedy granted for breach [of the promise] may be limited as justice requires." Restatement (Second) of Contracts § 90(1) (1979). In Kiely, the court cautioned that "any remedial order in cases involving claims based on promissory estoppel must be fashioned carefully to achieve fairness to all parties in the circumstances of the particular case." Kiely, 670 P.2d at 767. The Kiely court went on to recognize that an award of compensatory damages for promissory estoppel is grounded

upon "principles of fair dealing familiar to equity jurisprudence." Id. Thus, "[d]amages awarded in a sufficient amount to compensate for the actual loss sustained is a proper remedy." Zick v. Krob, 872 P.2d 1290, 1295 (Colo. App. 1993); Mooney v. Craddock, 530 P.2d 1305 (Colo. App. 1974).

### 3.     Recovery of back pay and front pay.

In cases where promissory estoppel claims were based upon employers' representations to their employees, courts have upheld awards for both front and back pay. The parties have cited those cases in their pleadings: Cronk v. International Rural Elec. Ass'n., 1992 WL 161811 (Colo. App. 1992) ("Cronk II"); Gomez v. Martin Marietta Corp., 50 F.3d 1511, 1518 (10th Cir. 1995) (applying Colorado law).

The relevant facts in the Cronk case are set forth in the Cronk I decision:  Mr. Cronk was employed by the International Rural Electric Association ("IREA"), a public utility.[1]  Mr. Cronk alleged that he had been directed by the general manager to perform illegal and irregular practices.  As a result of the general manager's requests, Mr. Cronk voluntarily sought a demotion to a non-management position.  His immediate supervisor promised that Mr. Cronk would be permitted to take the transfer without reprisal.  However, before his transfer, Cronk was informed that his performance was unsatisfactory and his employment was terminated.  Prior to that time, his performance evaluations had been uniformly

---

[1]      In the Cronk case there were two additional plaintiffs.  They did not allege claims for promissory estoppel and therefore the facts surrounding their claims are not discussed here.  Cronk I, 765 P.2d at 619-24.

satisfactory. <u>Cronk I</u>, 765 P.2d at 621. Mr. Cronk sued, asserting claims under promissory estoppel, wrongful discharge, and other theories. Cronk's promissory estoppel claims were based upon two theories: first, the termination procedures contained in the employee handbook had not been followed; second, his supervisor promised no retaliation for his demotion. <u>Id</u>. at 624. On remand, the case was tried to a jury and Cronk prevailed on his promissory estoppel claim based upon the handbook, his promissory estoppel claim based upon retaliation, and his wrongful discharge claim. The jury awarded him $371,687 in economic damages for all three claims, but did not distinguish between the promissory estoppel claims and the wrongful discharge claim. <u>Cronk II</u>, 1992 WL 161811 at *1. Cronk also received prejudgment interest on his damages. Those awards were affirmed by the Colorado Court of Appeals. <u>Id</u>. at *3-5, 9.

In the case of <u>Gomez v. Martin Marietta Corp.</u>, 50 F.3d at 1514, Mr. Gomez sued his former employer alleging breach of contract and discrimination based on age, race and national origin. The jury returned a verdict in favor of Mr. Gomez on his contract and age discrimination claims. Mr. Gomez's contract claim was based upon a progressive discipline procedure contained in the company's human resources manual and other personnel documents. On appeal, the company challenged the verdict with respect to the contract claim. The Tenth Circuit held that, under Colorado law, an employee may enforce provisions contained in personnel documents under theories of contract or promissory estoppel. <u>Id</u>. at 1515. The <u>Gomez</u> jury was instructed on the law governing both theories and ultimately

awarded $80,485.50 in lost future wages and benefits to Mr. Gomez. Id. at 1517- 18.  The

Tenth Circuit refused to overturn the verdict, concluding that there was sufficient evidence

to raise the question of whether the company had assumed an enforceable obligation based

upon either contract or estoppel theories.  Id. at 1517.  The court also concluded that the

award of front pay was not speculative, as the company had argued, because Mr. Gomez'

expert based her front pay calculations on the assumption that, had Mr. Gomez not been

discharged, he would have either stayed on the job or would have moved to another job with

higher pay.  Id. at 1518.

While these cases are instructive on the question of the availability of front and back

pay for promissory estoppel claims, this case can be distinguished on several important

grounds.  First, unlike the plaintiffs in Cronk and Gomez, Ms. Greco prevailed on her

promissory estoppel claim alone.  Mr. Cronk prevailed on two estoppel claims and his claim

for wrongful discharge, Cronk II, 1992 WL 161811 at*1, and Mr. Gomez prevailed on his

contract claim (which could have been decided either on contract or estoppel grounds) and

on his claim for age discrimination. Gomez, 50 F.3d at 1517-18.  Second, the juries in Cronk

and Gomez did not specify a separate award for each claim; rather, they awarded a total

amount for all the claims found in favor of the plaintiffs.  Therefore, it is impossible to tell

whether the awards in those cases were based upon estoppel theories, other theories that the

plaintiffs prevailed upon, or both.  Because of these distinctions, it cannot be said that these

cases provide unquestionable support for an award of front and back pay to Ms. Greco.

However, Ms. Greco did prevail on her promissory estoppel claim and she is entitled to a remedy.

**4.    Ms. Greco is entitled to recover back pay.**

Woodcrest has taken the position that because the enforcement of its promise to provide another evaluation to Ms. Greco would not have resulted in a right to long-term employment, she is not entitled to damages for front or back pay.  Woodcrest contends that it would have immediately terminated Ms. Greco after giving her the evaluation it promised. This contention is not supported by the evidence presented in this case.  Further, if that were the case, the promised evaluation would have been a mere formality.  The purpose of an evaluation or warning is to provide an employee notice of a problem and to give the employee time to remedy the situation, thereby avoiding termination.  In this instance, Ms. Greco was provided with one warning and an assurance that she would receive another evaluation in a month.  Any reasonable person in Ms. Greco's position would have assumed that the second evaluation would provide her with information as to whether her performance had improved. When Woodcrest terminated her before providing her with this information, it denied her a chance to remedy any performance deficiencies that might have remained.  If she had this opportunity, Ms. Greco might very well have been able to remain on the job.  Therefore, Ms. Greco is entitled to back pay.

Ms. Greco has limited her claim for back pay to the time period from February 27, 2002, through September 1, 2004.  (See Pl.'s Br. in Support of Pl.'s Mot. for Award of Back

Pay, Prejudgment Interest, Reinstatement or Front Pay, in Lieu of Reinstatement, and Postjudgment Interest 6. Therefore, this Court will hear evidence of back pay, from February 27, 2002, through September 1, 2004, only.

### 5.      An award of front pay or reinstatement would be too speculative.

Ms. Greco has argued that because Woodcrest breached its promises, she is entitled to front pay or reinstatement, as well as back pay. The September 1, 2004, date is significant because that is the date given by Ms. Greco corresponding with the time she learned she was pregnant with twins, suspended her job search, and was "taking some time off." (Trial Tr. 4:21, August 16, 2005). In fact, the trial in this matter had to be rescheduled due to the twins' premature birth and subsequent illness. (See Ms. Greco's Unopposed Mot. to Reset Trial Date, April 25, 2005). Because of these intervening events, any damages in terms of front pay would be entirely too speculative, as a matter of law.[2]

### 6.      Mitigation of damages.

Woodcrest has argued that Ms. Greco has failed to mitigate her damages. Under Colorado law, plaintiffs must take reasonable steps to mitigate their damages. Burt v. Beautiful Savior Lutheran Church, 809 P.2d 1064, 1068 (Colo. App. 1990) The failure to do so is an affirmative defense which defendants must establish by a preponderance of the evidence. Id. Therefore, the Court will hear evidence on the question of Ms. Greco's efforts

---

[2]

Moreover, at trial, the Court ruled that Ms. Greco had waived front pay. (Trial Tr. 25-26, August 22, 2005). Because those damages are too speculative, the Court will not reconsider the question of waiver here.

to mitigate her damages.[3]

**THEREFORE**, in accordance with the above findings and conclusions, Plaintiff's Motion for Award of Back Pay, Prejudgment Interest, Reinstatement or Front Pay, in Lieu of Reinstatement, and Postjudgment Interest is **GRANTED**, in part, and **DENIED**, in part.

A hearing is hereby set for _May 11, 2006 @ 1:30 p.m._, in Cheyenne, Wyoming. The hearing will address: (1) the amount of back pay to which Ms. Greco is entitled from February 27, 2002, through September 1, 2004; and (2) whether Ms. Greco mitigated her damages.

Dated this _26th_ day of February, 2006.

_____
UNITED STATES DISTRICT JUDGE
SITTING BY DESIGNATION

---

[3] In connection with the question of whether Ms. Greco has mitigated her damages, Woodcrest has raised objections to Doris Shriver, Ms. Greco's expert on mitigation, under principles set forth in Daubert v. Merrell Dow Pharms., 509 U.S. 579 (1993), and Federal Rule of Evidence 702. While the Court does not believe expert testimony is required for proof of mitigation or failure to mitigate, should Ms. Greco intend to introduce testimony from Doris Shriver at the hearing in this matter, a Daubert hearing will be held immediately prior to the evidentiary hearing on damages.