FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2006 JUN 27 AM 11: 36

GREGORY C. LANGHAM
CLERK

BY_____ DEP. CLK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 03-WY-1853-CAB (BNB)

KRISTIN GRECO,

    Plaintiff,

v.

WOODCREST HOMES, INC. and
HARBOUR HOMES, INC., f/k/a GEONERCO, INC.,

    Defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO DAMAGES

This matter came before the Court on May 11, 2006, on a hearing to consider damages. Counsel for the parties presented evidence as to the amount of back pay to which Plaintiff Kristin Greco is entitled and whether Plaintiff mitigated her damages. Following the hearing, the parties submitted written arguments and proposed findings of fact and conclusions of law. The Court, having considered the testimony, arguments of counsel, and applicable law, finds as follows:

### BACKGROUND

In March 1998, Defendants Woodcrest Homes, Inc. and Harbour Homes, Inc., f/k/a Geonerco, Inc. (collectively "Woodcrest"), hired Plaintiff Kristin Greco as a marketing coordinator. She was terminated on February 27, 2002. Subsequent to her termination she filed this lawsuit alleging pregnancy and gender based discrimination and promissory estoppel. A jury trial was held and the

jury found in favor of Woodcrest on the pregnancy discrimination claim and in favor of Plaintiff on the promissory estoppel claim. The promise which formed the basis for Plaintiff's promissory estoppel claim was that her supervisor, David Havel, informed Plaintiff that he would review her performance in one month, after she had been provided with a December 14, 2001, written warning listing performance deficiencies. Plaintiff never received the promised January evaluation and Mr. Havel told her that she was doing fine. Nevertheless, on February 27, 2002, Woodcrest terminated her employment. The jury found that Plaintiff proved her claim for promissory estoppel.

Prior to trial, the parties stipulated that the Court would determine damages if the jury found for Plaintiff on any of her claims. (Stipulation, August 15, 2005.) On March 3, 2006, this Court issued an initial Order on Damages which held that any damages in terms of front pay would be entirely too speculative and reinstatement would be inappropriate as a matter of law. The Court found, however, that Plaintiff was entitled to back pay. Plaintiff limited her claim for back pay to the time period from February 27, 2002, through September 1, 2004. (See Pl.'s Br. in Support of Pl.'s Mot. for Award of Back Pay, Prejudgment Interest, Reinstatement or Front Pay, in Lieu of Reinstatement, and Postjudgment Interest 6.) This Court will therefore only consider the back pay to which Plaintiff is entitled for the stipulated period of February 27, 2002, through September 1, 2004.

## FINDINGS OF FACT

1. At the time of her termination, Plaintiff earned a monthly salary of $3,500, which is the

equivalent of $42,000 annually. (Damages Hr'g Tr. 125.) Plaintiff has proved that if she not been terminated and if her performance was satisfactory, as she had been assured, her salary would have increased to $4,250 per month and $46,000 per year in September, 2002 and she would have received a $5000 raise. (Id.)

2.      Plaintiff has proved that the value of her lost fringe benefits should be calculated at 28.9% of her monthly income. (Id. at 131-133.) Plaintiff, however, is not requesting fringe benefits for the first month following her termination, as she received some benefits during that month. Consequently the Court will not award damages for a loss of fringe benefits for the month following her termination. (Id. at 135-136.)

3.      Plaintiff should not be compensated for three months after the birth of her child on May 22, 2002, during which she would have taken family leave. (Id. at 134; Pl.'s Ex. 56 at 4.)

4.      Because Plaintiff was terminated near the end of her pregnancy, it is not reasonable to expect her to locate a job until after the birth of her child in May, 2002. It is consequently fair to award her damages for lost wages for two months she would have worked prior to the birth of her child.

5.      Plaintiff conducted a passive job search. Most of the job applications which she submitted were sent by mail or e-mail, with minimal or no follow-up. (Damages Hr'g Tr. 64.) Plaintiff did little to seek personal contacts with potential employers or to network in an effort to locate legitimate potential employers. The logs which she kept for unemployment purposes are inconsistent and haphazardly prepared. Plaintiff's testimony and the documentary evidence she produced indicate that

she merely "went through the motions" of applying for jobs, but in actuality did not attempt to conduct a reasonable job search. The Court is persuaded by the testimony of Defendants' vocational and career expert, Mary Ann Adams, that given Plaintiff's education, experience and skills, and the job market after her termination, had she actively conducted a reasonable job search, she would have located a job within three to six months. (Damages Hr'g Tr. 240.)

6. It is equitable to compensate the Plaintiff for loss arising out of her promissory estoppel claim by awarding her damages for eight months of lost salary and seven months of lost benefits. The eight month period represents loss she incurred for two months prior to the birth of her child, March and April, 2002, and six months following a three-month leave of absence after her child's birth, from August, 2002 through January, 2003.[1] Plaintiff's damages are accordingly as follows:

|  | Salary loss | Benefit loss |
| --- | --- | --- |
| March 2002 | $3, 500 | 0 |
| April | $3,500 | 1,012 |
| August | $3,500 | 1,012 |
| September | $4,250 | 1,228 |
| October | $4,250 | 1,228 |
| November | $4,250 | 1,228 |
| December | $4,250 | 1,228 |
| January 2003 | $4,250 | 1,228 |
| Total | $31,750   + | $8,164 = $39,914 |

7. Even if Plaintiff had conducted a more aggressive job search, considering the equities in this case, the promise which was broken, and all the surrounding circumstances, the Court would still

---

[1] The Court finds that it is reasonable to award damages based on whole months as calculated by the Plaintiff's expert on economic damages.

4

find that in fairness to both parties, Plaintiff should be compensated $39,914.

8.      Plaintiff should not be additionally compensated for the loss of the employee home purchase benefit. Plaintiff's economic expert based his fringe benefit calculation on a national average of 28.9%. He used this figure because Defendants did not inform him of the value of their fringe benefit plan. The expert testified that it would be improper to tailor the national average by deleting benefits from Defendants' plan. (Damages Hr'g Tr. 172.) It would accordingly be inconsistent to award Plaintiff an additional amount for loss of the home purchase benefit. Moreover, there is clearly insufficient evidence that Plaintiff would have ever taken advantage of the home discount plan or what the terms of any home purchase would have been. (Id. at 89-93.) Consequently, damages for loss of the home purchase benefit would be entirely too speculative.

## CONCLUSIONS OF LAW

1.      The Colorado Supreme Court has articulated that "promissory estoppel is a distinct contract claim grounded in section 90(1) of the Restatement (Second) of Contracts." Berg v. State Bd. of Agriculture, 919 P.2d 254, 259 (Colo. 1996), citing Board of County Comm'rs of Summit County v. DeLozier, 917 P.2d 714, 716 (Colo. 1996). The doctrine represents a modest extension of the basic contract principle that one who makes promises must be required to keep them. Id. A promise that is binding pursuant to the doctrine of promissory estoppel is a contract. Id.

2.      The doctrine of promissory estoppel encourages fair dealing in business relationships and discourages conduct which unreasonably causes foreseeable economic loss because of action or

inaction induced by a specific promise. Kiely v. St. Germain, 670 P.2d 764, 767 (Colo. 1983). Any remedial order in cases involving claims based on promissory estoppel must be fashioned carefully to achieve fairness to all parties in the circumstances of the particular case and may be limited as justice requires. Id.

3. An injured party has the duty to take such steps as are reasonable under the circumstances in order to mitigate or minimize the damages sustained. Ballow v. PHICO Ins. Co., 878 P.2d 672, 680 (Colo. 1994); Westec Const. Management Co. v. Postle Enterprises I, Inc., 68 P. 3d. 529, 532 (Colo. 2002) ("A party seeking recovery under a contract has a duty to mitigate its damages."). This means that the Plaintiff may not recover damages for injuries which she reasonably might have avoided. Ballow, 878 P.2d at 680.

3. Failure to mitigate damages refers to the injured party's failure to take such steps as are reasonable under the circumstances to minimize the resulting damages. However, the Plaintiff is not required to take unreasonable measures in an effort to mitigate her damages. Burt v. Beautiful Savior Lutheran Church of Broomfield, 809 P.2d 1064, 1068 (Colo. App. 1990).

4. Under Colorado law, prejudgment interest in non-personal injury actions is available "at the rate of eight percent per annum compounded annually for all moneys or the value of all property after they are wrongfully withheld or after they become due to the date of payment or to the date judgment is entered, whichever first occurs ." Loughridge v. Chiles Power Supply Co., Inc., 431 F.3d 1268, 1288 (10th Cir. 2005), citing Colo. Rev. Stat. § 5-12-102(1)(b)(2004). See also United Intern.

Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1233-34 (10th Cir. 2000) (finding that in Colorado one who is damaged by a breach of contract is entitled to recover prejudgment interest of eight percent annually from the time of the breach), aff'd, 532 U.S. 588 (2001); Echo Acceptance Corp. v. Household Retail Services, Inc., 267 F.3d 1068, 1092 (10th Cir. 2001) ("The Colorado General Assembly has adopted a rate of at least eight percent per annum, and the district court had no discretion to modify the statute in that respect.").

5.     Plaintiff is entitled to prejudgment interest on the total damage award of $39,914 from her termination on February 27, 2002, through the date of the judgment entered in this matter, compounded annually. Under Colorado law, it is also appropriate to apply interest to this sum even though it would have been due in periodic payments. James v. Coors Brewing Company, 73 F. Supp. 2d 1250, 1257 (D. Colo. 1999) (Babcock, J.).

**NOW THEREFORE, IT IS HEREBY ORDERED** that damages shall be awarded to Plaintiff Kristin Greco in the amount of $39,914 for lost past wages and fringe benefits.

**IT IS FURTHER ORDERED** that Plaintiff Kristin Greco is also awarded prejudgment interest on the $39,914 from February 27, 2002 through the date of judgment, at a rate of eight percent per annum compounded annually.

Dated this 22d day of June, 2006.

_____
UNITED STATES DISTRICT JUDGE
SITTING BY DESIGNATION